ROBERT P. SMITH, Jr., Chief Judge,
specially concurring.
I agree with Judge Downey’s opinion reversing the punitive damage award and write only to elaborate a bit further my reasons for concluding that no permissible view of the record permits the conclusion that the appellant title company acted maliciously, deserving of punitive measures.
Though we sustain the trial judge as trier of the facts in his view that the title company’s actions amounted to willful “harassment” in a legal sense, justifying compensatory damages including attorney’s fees and costs, Section 559.72(7), Florida Statutes (1979), I think even that case against the title company is a bit thin. Therefore I readily join Judge Downey in finding no record basis for suggesting that the title company’s motive in wanting the Thomas insurance bill paid or otherwise satisfied was to “inflict injury” on the Deans, or was “without a reasonable cause or excuse.” Wilson v. O’Neal, 118 So.2d 101 (Fla. 1st DCA 1960), dism., 123 So.2d 677 (Fla.1960), cert. den., 365 U.S. 850, 81 S.Ct. 813, 5 L.Ed.2d 814 (1961); Story v. J. M. Fields, Inc., 343 So.2d 675 (Fla. 1st DCA 1977), cert. den., 348 So.2d 954 (Fla.1977).
As settlement agent in charge of closing the sale between appellee Ms. Dean, joined by Mr. Dean her husband, as sellers, and Dr. and Ms. Britt, as buyers, the title company had a cause or excuse that was reasonable, whether or not legally sound, for wanting no potential claim outstanding against the sale proceeds for which it, the title company, considered itself responsible. The title company’s manager thought, erroneously but in good faith — no basis for doubting her good faith is suggested — that the insurance bill might be a lien against the property and the sale proceeds. The title company’s normal practice was to pay from the sale proceeds any outstanding bills associated with the property. That practice may not have been justified in terms of the title company’s responsibilities as settlement agent, but without dispute it was the company’s practice, not a device concocted to oppress these particular sellers, and not a practice that one would condemn as patently oppressive on its face, unrelated to the sale of property.
The title company had a “reasonable cause or excuse” for wishing to protect itself either against a possible lien or against its own continuing involvement in a money dispute in which it had no interest, nor any hope of profit. It would seem to follow that the company had at least a cause or excuse that was reasonable, legally sound or not, to insist that the contested debt be settled by the time of closing if it, the title company, was to be responsible as settlement agent and if the closing was to take place without delay, as Mr. Dean insisted, on May 16, 1979.
Mr. Dean, an insurance agent himself, admitted owing the Thomas Insurance Agency more than $1,300 for premiums, several years unpaid, for insurance on the property to be sold by Ms. Dean and her husband to the Britts. Mr. Dean testified that this debt “was owed by me on a quasi business relationship with Pat Thomas,” but that Thomas owed him more money, “decidedly so,” than he owed Thomas.
Thus Thomas claimed the Dean debt should be paid from the sale proceeds, and Dean denied both the debt and that it should be so paid. In these circumstances *207 the title company was hardly bound to resolve the question of the Dean-Thomas debt at its peril. What Mr. Dean argued to the title company at and before the closing— notably, it was Mr. Dean, the debtor, not Ms. Dean, the nominal seller, who did the arguing — was that “I had no incidents of ownership in the property” and “that property has never been in my name.” Thus the predicate for Ms. Dean’s punitive damage claim, so recognized by the allegations of her complaint in this action, was that Mr. Dean had no interest in the property which conceivably could have been subject to a claim of lien for insurance ordered for the property by Mr. Dean.
I think Mr. Dean’s assertion — which for present purposes we find was correct— might reasonably have been regarded with some doubt by a cautious settlement agent, wary of making erroneous disbursements after notice from Mr. Dean’s creditor. The title company’s doubts concerning Mr. Dean’s disinterestedness in the sale — it was he, after all, who made that the point in issue — could not have been assuaged by Mr. Dean’s aversion to postponing the closing until Mr. Dean and Mr. Thomas settled their affairs. In Mr. Dean’s words at trial, the title company representative said at the closing “that if there were to be a closing, today, that day, that that account would have to be paid, otherwise there could be no closing.” Mr. Dean declared:
[M]y wife and I had entered into a contract to sell with ... Dr. Britt.... And in there it called for us to close the loan on or before, or close the sale on or before the 16th day of May, the day of closing, or otherwise the deal was off, the offer was rescinded, and we were just at ground zero.
Lamentations of this sort were hardly calculated to assure the title company, which least of all parties present was responsible for setting the closing date, that the husband-protestant, whose signature on the deed was required, had no interest in the property that would justify his creditor’s claim for payment from the sale proceeds for insurance on the very property sold.
Once Mr. and Ms. Dean signed a closing statement requiring the title company to disburse to Thomas Insurance Agency the amount of the disputed debt, the title company could only have worsened its vulnerability by failing to disburse as the statement required. Nevertheless, the title company did not disburse directly to Thomas, but gave the check to Mr. Dean (he of no interest in the sale proceeds), and for 30 days allowed Mr. Dean the opportunity of resolving his dispute with Thomas. When after 30 days Mr. Dean neither delivered the check nor reported his negotiations (if any) to the title company, the company stopped payment on its check and issued another to Thomas. In this I think the title company cannot be regarded as willfully injurious to Mr. Dean, nor as acting without reasonable cause or excuse.
Therefore I join in finding no basis for the punitive damage award.